**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| JAMES LEE SMITH, | Civil Action No. 15-6437 (SRC) |
| Petitioner, | |
| v. | **OPINION** |
| WILLIE LEE BONDS and THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | |
| Respondents. | |

**STANLEY R. CHESLER, United States District Judge**

### I. INTRODUCTION

This matter is before this Court on petitioner James Lee Smith's ("Petitioner") petition ("Petition") filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the Court will deny the Petition and will also deny a certificate of appealability.

### II. FACTUAL BACKGROUND

On December 30, 2006, the Elizabeth Police Department received a tip from a citizen informant that drugs were being sold in the common hallway of an apartment complex on West Jersey Street. Police officer Michael Gonzalez ("Gonzalez") and his partner parked near the complex and exited their car. They were then approached by the informant, who said that drugs were "coming out of Apartment 12" of the complex. Gonzalez and his partner went to the apartment and, being in plainclothes, planned to buy drugs undercover. Gonzalez knocked on the door and a male voice asked "Who is it?" The police did not respond. Petitioner abruptly opened

the door. Gonzalez observed him holding two, tied-up baggies containing a white, rock-like substance in his right hand, palm up. Based upon his training and experience, Gonzalez suspected the substance was cocaine. Gonzalez said "Police, stop!" and showed his badge. Petitioner closed his hand and attempted to shut the door, but Gonzalez thwarted him by sticking his arm between the door and the door frame. Once inside, Gonzalez saw Petitioner putting his hand into his right jean pocket. Petitioner attempted to retreat but Gonzalez and his partner were able to apprehend and handcuff him. In a search incident to his arrest, the police found fourteen bags of suspected cocaine in Petitioner's pants pocket. (ECF No. 13-8 at 3-5.)

### III.  PROCEDURAL BACKGROUND

Petitioner was indicted for first-degree possession of cocaine with the intent to distribute, and third-degree possession of a controlled dangerous substance. (ECF No. 13-8 at 2.) Following an evidentiary hearing, the trial court denied Petitioner's motion to suppress ("Motion to Suppress") certain evidence the police discovered after a warrantless entry and search of his home. Petitioner then pled guilty to possession of cocaine with the intent to distribute. He was sentenced to a fifteen-year term of imprisonment, with five years of parole ineligibility. (*Id.*)

On May 27, 2009, Petitioner filed a direct appeal. He argued the police searched his home based only upon an uncorroborated tip from an unknown informant and, therefore, the warrantless search was unlawful. (ECF No. 13-2 at 4-7.)

On May 5, 2010, the Appellate Division of the Superior Court of New Jersey ("Appellate Division") disagreed with Petitioner and affirmed in an unpublished opinion. (ECF No. 13-4.)[1]

---

[1] "Defendant presents the following argument: The uncorroborated tip from the unknown informant did not give the police permission to attempt to gain entry into Defendant's home. Thus, the drugs were not in 'plain view' and the search of the rest of the apartment was illegal and the seized contraband must be suppressed." *State v. Smith*, No. A-6214-07T4 (App. Div. May 5, 2010). (ECF No. 13-4.)

There is no evidence of record that Petitioner sought relief from the New Jersey Supreme Court on direct appeal. *See* ECF No. 13-8 at 2 (January 5, 2015 Appellate Division opinion affirming denial of post-conviction relief ("PCR"): "Defendant filed a direct appeal of his [M]otion . . . We affirmed denial of the [M]otion . . . Defendant [then] filed a PCR petition . . .").

On or about January 25, 2011, Petitioner filed a pro se PCR petition. (*See* ECF No. 13-5 at 39.)[2] Subsequently, his counsel submitted an amended petition that Petitioner signed and dated October 16, 2011. (*See* ECF No. 1-1 at 5; ECF No. 13-5 at 37-41.) The amended PCR petition raised ineffective assistance of counsel ("IAC") claims regarding Petitioner's attorneys at both the Motion to Suppress hearing and during his motion for reconsideration of that Motion.[3] (ECF No. 1-1 at 5-6; ECF No. 13-5 at 44-45 and 49-55.) Specifically, Petitioner claimed that counsel on the Motion to Suppress was ineffective because he: (a) failed to call Petitioner to testify; (b) failed to call witnesses who supposedly would have testified about the layout of Petitioner's apartment and the damage to its doorframe during the evidence seizure incident, (c) failed to seek admission of photographs of the layout and the doorframe of Petitioner's apartment that allegedly would have discredited the State's evidence, (d) failed to prove that a Newark Municipal Court warrant existed at the time police officers entered and searched Petitioner's apartment, (e) failed to properly investigate the evidence seizure incident, and (f) failed to order the grand jury minutes for the suppression motion. (ECF No. 1-1 at 5-6; ECF No. 13-5 at 44-45, 49-55.)

---

[2] Petitioner's Amended PCR Petition states that the basis for his original PCR petition was "ineffective assistance of counsel in the [M]otion to [S]uppress evidence." (ECF No. 13-5 at 39.) However, no parties have provided this Court with the original PCR petition.

[3] *See* ECF No. 13-5 at 55 (September 28, 2012 Opinion of the Law Division, denying PCR petition) ("Defendant has not articulated the existence of any new evidence, nor has he articulated a basis for arguing that new evidence would have convinced the Court to change its decision").)

3

The trial court denied the PCR petition on September 28, 2012. (ECF No. 13-5 at 56.)

In July 2013, Petitioner's counsel filed a letter brief appealing denial of the PCR petition on three grounds: (1) counsel at the suppression hearing rendered IAC because "witnesses with first-hand knowledge of the [suppression] motion facts" were not produced and photographs of damage to Petitioner's front door were not introduced (ECF No. 13-5 at 10-15); (2) the case warranted "remand[] for an evidential hearing" (*id.* at 16-17); and (3) "the arguments advanced in the Amended Verified Petition in Support of Post-Conviction Relief." (ECF No. 13-5 at 2.)

Applying the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) and *State v. Fritz*, 105 N.J. 42 (1987), the Appellate Division affirmed denial of the PCR petition on the merits. (ECF No. 13-8 at 9 ("*Smith II*").)

On June 16, 2015, the Supreme Court of New Jersey denied Petitioner's petition for certification of the denial of PCR. (ECF No.13-9.)

Petitioner filed his habeas Petition with this Court on August 26, 2015. (ECF No. 1.) The case was closed on September 9, 2015 due to an administrative issue concerning his filing fee, but that issue was resolved when Petitioner filed an Amended Petition on September 24, 2015. (ECF No. 4 ("Amended Petition").)[4] In it, Ground One challenged the police search of Petitioner's apartment based on an "uncorroborated tip from the unknown informant," Ground Two argued for dismissal of Petitioner's indictment stemming from the challenged search,

---

[4] The Amended Petition is difficult to construe. For example, Ground One states: "See [*illegible word*] original document ground, I forget the word for word for ground one." (ECF No. 4 at 5.) Grounds Two, Three and Four similarly provide, directing this Court only to "see original document" (*id.* at 7-10) rather than identifying particular grounds for habeas relief. As pro se habeas petitions must be construed with a measure of tolerance, *Royce*, 151 F.3d at 118, this Court construes the "original document" phrase in each of the four grounds of the Amended Petition (ECF No. 4) to refer to Petitioner's original habeas Petition (ECF No. 1) and not to raise any additional claims that were not already asserted in his original habeas Petition.

4

Ground Three challenged photos taken in connection with "the search of the rest of the apartment [that] was illegal", and Ground Four alleged ineffective assistance of counsel "for not investigati[ng] all the above." (ECF No. 1 at 2, 4-5.)

On November 17, 2015, the Supreme Court of New Jersey denied Petitioner's motion for reconsideration of PCR denial. (ECF No. 13-10.)

Respondents contend that: Petitioner has failed to exhaust all his state remedies regarding the issues in Grounds One, Two, and Three of the Amended Petition (ECF No. 13-1 at 6-7); *Stone v. Powell*, 428 U.S. 465 (1972), requires dismissal of the Fourth Amendment issues in Grounds One, Two, and Three (*id.* at 7-8); and Petitioner's claims fail on the merits. (*Id.* at 8-19.)

This Court has reviewed the Amended Petition and finds that: (1) the unexhausted claims in Grounds One, Two, and Three are patently meritless; and (2) the *Smith II* court's decision on the exhausted claim in Ground Four is not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, the Amended Petition will be denied.

## IV. ANALYSIS

### A. PRO SE PLEADING

Petitioner brings the Amended Petition as a pro se litigant. A pro se pleading is held to less stringent standards than pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989).

## B. HABEAS STANDARD OF REVIEW

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. *Williams*, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).

## C. EXHAUSTION ANALYSIS

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective..." 28 U.S.C. § 2254(b)(1). *See also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d

506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. *See Cranberry v. Greer*, 481 U.S. 129 (1987); *Rose*, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. *See Rose*, 455 U.S. at 519.

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); 28 U.5.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The petitioner generally bears the burden to prove all facts establishing exhaustion. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

### 1. **Unexhausted Grounds One, Two And Three Are Without Merit**

Grounds One, Two, and Three of the Amended Petition raise the issues Petitioner argued in his Motion to Suppress: i.e., issues relating to evidence seized at his apartment by police. (ECF No. 1 at 4-5; ECF No. 4 at 5-8.) Petitioner directly appealed these issues (referred to as "Direct Claims") to the Appellate Division but did not seek certification from the Supreme Court of New Jersey when his appeal was denied; and he did not include the Direct Claims in his PCR petition. Therefore, the Direct Claims appear unexhausted.

To the extent that Petitioner's constitutional claims in Grounds One, Two, and Three were not fairly presented and are thus unexhausted, this Court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here"). In other words, this Court is free to deny Grounds One, Two, and Three on the merits, and that is what the Court will now do for the following reasons:

First, *Stone v. Powell*, 428 U.S. 465 (1976) forecloses Petitioner's ability to raise on habeas a Fourth Amendment violation. Under *Stone*, Fourth Amendment claims are not cognizable on habeas review unless state courts denied petitioner opportunity for a full and fair litigation of the claims. 428 U.S. at 494-95, 495 n. 37 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"); *see also Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986). Petitioner does not argue that he did not receive a full and fair hearing. Indeed, the

8

state courts addressed the Direct Claims. (*See* ECF No. 13-4 at 2 (May 5, 2010 Appellate Division opinion: "We reject defendant's argument [on appeal from denial of his Motion to Suppress] substantially for the reasons set forth in Judge Moynihan's oral opinion denying [that] [M]otion").)[5] Pursuant to *Stone*, federal habeas review is unavailable for Grounds One, Two, and Three.

Even if *Stone* does not bar these claims, they are without merit as well. The Constitution prohibits the government from conducting "unreasonable searches" of "persons, houses, papers, and effects," U.S. Const. amend. IV. Whether a search is "unreasonable" is usually determined by the warrant requirement. *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2452 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). A "few specifically established and well-delineated exceptions" to the warrant requirement exist, *id.*, one being the exigent-circumstances exception. *U.S. v. Mallory*, 765 F.3d 373, 383 (3d Cir. 2014). Under this exception, exigent circumstances may excuse a police officer's warrantless search. *Id.* at 384 (citing *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006)). This exigent-circumstances exception is adjudged from an objective standpoint; "the subjective intent of the officer is irrelevant." *Id.* at 383 (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). It was not contrary to or an unreasonable application of this clearly established U.S. Supreme Court precedent for the Law Division to deny Petitioner's Motion to Suppress (ECF No. 13-14 at 12) and for the Appellate Division to uphold that denial. (ECF No. 13-4.) The Law Division explained that "the facts of this case fit the [exigent circumstances] exception to th[e] [presumptive unconstitutionality of warrantless searches]":

---

[5] Petitioner presented the Direct Claims via allegations of direct violation of the Fourth Amendment, rather than via ineffective assistance claims. Thus, his manner of presenting these claims does not circumvent *Stone*'s bar on habeas review of a Fourth Amendment claim.

9

> [T]he informant told [Gonzalez] about drug trafficking from both the third floor hall and Apartment 12. [T]he officers well had a duty to investigate . . . [S]erendipitous events unfolded at Apartment 12, including the defendant holding bags of crack in his open, upwardly facing palm when he answered the door, the officer noticing a plastic bag with bagged cocaine protruding from a tear when he retrieved a hypodermic needle from the floor, finding money behind a pillow during a protective sweep -- that may not have been upheld if defendant was the only person in the apartment -- and the sighting of the pipes and scouring pad as he stood in the apartment . . . Knocking on the door was not an unreasonable investigative measure . . . As with most drug cases, the exigency is the threatened destruction or removal of evidence . . . This can hardly be viewed as a planned search and arrest. Events here happened one after another . . . It was not as though the officer systematically searched the apartment. The items found were found quickly in plain view or as a result of a protective sweep. The nature of the seizures here was such that the items were found prior to any time elapsing during which a warrant could have been obtained. This is a case where immediate action was necessary to preserve the drugs seen in plain view. Thus, a search warrant was not required.

(ECF No. 13-13 at 49; ECF No. 13-14 at 1, 3, 4-5, 6, 7 and 8.) The state courts' finding of exigency is consistent with Fourth Amendment precedent. *Kentucky v. King*, 563 U.S. 452, 459-60 (2011) (citations omitted).

Thus, Petitioner's claims in Grounds One, Two, and Three are also without merit even if not barred by *Stone*.

### 2. Ground Four Is Not Contrary To Or An Unreasonable Application Of United States Supreme Court Precedent

Ground Four of the Amended Petition raises IAC issues Petitioner had argued in his PCR petition. (ECF No. 1 at 5; ECF No. 1-1 at 5; ECF No. 13-5 at 37-41.) As noted previously, where a state court has adjudicated a petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state] [c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by

the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Ground Four does not surmount this standard of review.

The *Smith II* ruling, which found that Petitioner failed to make a prima facie showing of IAC because he had not shown *Strickland*'s "deficient performance" prong of the two-part test (ECF No. 13-8 at 8-9), was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The *Smith II* court explained:

> First, the record is clear it was no oversight that defense counsel did not call defendant as a witness. For strategic reasons, the attorney made a calculated determination defendant should not testify at the suppression hearing and so advised defendant of his decision. After conferring with his attorney, defendant also agreed he should not testify, a decision confirmed on the record. Second, the [evidence defendant argues his counsel should have offered as to] the damage to the door and door frame is not inconsistent with the State's position . . . Third, the other witnesses defendant claims should have been called did not see the encounter between the police and defendant at the door . . . In the final analysis, their testimony would not have been material.

(ECF No. 13-8 at 8.)

On habeas review, Petitioner has not shown that this adjudication of IAC claims by *Smith II* was contrary to, or involved an unreasonable application of, *Strickland* and its progeny. *See Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation omitted) (when the *Strickland* analysis is combined with 28 U.S.C. 2254(d), federal habeas courts' analysis is "doubly" deferential to both the state court and the defense counsel).

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d

11

Cir. 2005). By particularly considering issues such as specific strategy determinations made by counsel, Petitioner's own agreement at trial with his attorney's advice about testifying, and the immateriality of the other witnesses' testimony (ECF No. 13-8 at 8-9[6]), the *Smith II* court considered, as it was required to do under Supreme Court precedent, the reasonableness of counsel's representation under this case's particular facts, viewed as of the time of the challenged conduct of counsel. *Id.* When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). Here, this Court cannot say that the *Smith II* court's application of *Strickland* was unreasonable. The court set forth at length the correct *Strickland* analysis governing its decision (ECF No. 13-8 at 6-7) and then applied it to the specific facts of the record before it, including reasonable testimony strategy by counsel,

---

[6] Petitioner's original PCR petition also included allegations of IAC from his counsel's: (a) failure to prove that a Newark Municipal Court warrant existed at the time police officers entered and searched Petitioner's apartment, (b) failure to properly investigate the incident, and (c) failure to order the grand jury minutes for the suppression motion. (ECF No. 1-1 at 5-6; ECF No. 13-5 at 44-45, 49-55.) Having these issues before it, the PCR trial court, after the parties' briefing and arguments by counsel, found that "[P]etitioner has not made a prima facie showing by [a] preponderance of the evidence that he was denied effective assistance of counsel." (ECF No. 13-17 at 8.) Petitioner did not present issues (a) or (c) on appeal of denial of PCR, (ECF No. 13-5), and he has not demonstrated on habeas review how these two issues demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As to issue (b) (ECF No. 13-5 at 8, 14), the *Smith II* court discounted claims that Petitioner's counsel allegedly failed to properly investigate witnesses, given that the persons Petitioner claimed should have been called had only limited and immaterial knowledge. (ECF No. 13-8 at 8-9.) On habeas review, Petitioner has not demonstrated that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (per curiam).

Petitioner's consent to that strategy, the inability of the subject photos to refute police testimony, and the immateriality of the other witnesses. (*Id.* at 8-9.)

Therefore, Petitioner's claim in Ground Four is denied.

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI. CONCLUSION

This Court denies the § 2254 Amended Petition for the reasons stated in this Opinion. An appropriate Order follows.

Stanley R. Chesler
United States District Judge